# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ERIC C. RAJALA,
Trustee in Bankruptcy for the Estate of
Generation Resources Holding Company,
LLC

        *Plaintiff*,

 vs.

                                   Case No. 09-2482-EFM

ROBERT H. GARDNER, et al.


        *Defendants.*

_____

ERIC C. RAJALA,
Trustee in Bankruptcy for the Estate of
Generation Resources Holding Company,
LLC

        *Plaintiff*,                      Case No. 10-2243-EFM

vs.

LOOKOUT WINDPOWER, LLC, et al.,

        *Defendants*.


## MEMORANDUM AND ORDER

Plaintiff Eric Rajala, the Trustee for the bankruptcy estate of Generation Resources Holding

Company, LLC (GRHC), brought two cases against six individual defendants and fourteen corporate

entities.[1] The individual defendants formed GRHC for the purpose of developing wind farm projects in Pennsylvania, and on April 28, 2008, GRHC filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. GRHC has over $6,000,000 dollars in unpaid debts. Plaintiff asserts eighteen claims alleging that Defendants manipulated companies in an attempt to keep over $10 million in proceeds from the sale of the companies and leave GRHC with $6 million in debt.

Before the Court are Defendants' Motions to Dismiss the First Amended Complaint (Docs. 55, 57, and 58) as well as Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 101). Defendants' Motion to Dismiss the Second Amended Complaint incorporates by reference their arguments and authorities from their previous Motions to Dismiss the First Amended Complaint because the allegations in the Second Amended Complaint are identical to the First Amended Complaint.[2] For the following reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 101) and denies as moot Defendants' Motions to Dismiss the First Amended Complaint (Docs. 55, 57, and 58.)

## I. Factual and Procedural Background[3]

Highly summarized, Plaintiff Eric C. Rajala ("Trustee") is the Trustee in bankruptcy for

---

[1]The first case, Case No. 09-2482, was brought against six individual defendants and eight corporate defendants. Case No. 10-2243 was filed after the first case, and the Defendants include five "corporate shell defendants" and a Defendant named in the first complaint but inadvertently omitted from the caption. The Court granted Plaintiff's motion to consolidate on May 24, 2010 as "[t]he two cases arise out of the exact same facts and the pleadings are nearly identical except that the second case includes additional 'shell' corporations allegedly owned and controlled by defendants that plaintiff recently learned were involved in the transactions giving rise to the first case." *See* Doc. 50-1. The case is consolidated for all purposes, including the filing of dispositive motions.

[2]Defendant Windforce Holdings, Inc., is a named Defendant in the Second Amended Complaint and was previously identified as "John Doe Co." in the First Amended Complaint.

[3]For the purposes of this Order, the Court assumes the truth of these facts.

Generation Resources Holding Company, LLC ("GRHC").[4]  GRHC filed Chapter 7 bankruptcy on

April 28, 2008 in the United States Bankruptcy Court for the District of Kansas.

On February 8, 2002, GRHC was formed as a Delaware Limited Liability company, with its

principal place of business in Leawood, Kansas.  It was in the business of developing wind power

projects.  GRHC was owned by the following families: Defendants Robert H. and Robin Gardner;

Defendants James and Virginia Ansel; and Defendants William and Akiko Stevens (collectively

referred to as the "individual Defendants").  Each family owned a one-third interest in GRHC.

Defendants Robert Gardner, James Ansel, and William Stevens were officers in GRHC.

GRHC sought to develop three wind power projects in Pennsylvania.  In obtaining loans or

credit extensions from several companies, the Insiders[5] allegedly represented that GRHC was the

sole developer of these projects.  In February of 2004, GRHC principals began discussions with

Edison Capital about how to further develop the projects and ultimately sell them to Edison.[6]

In June of 2005, GRHC and Edison Capital generated a Memorandum of Understanding

("MOU") calling for Edison to acquire from GRHC the right to construct the three wind power

projects.  At that time, the MOU allegedly represented that GRHC was the sole developer of the

projects.  Over the next several years, the Insiders formed several companies, including Forward

Windpower (and several holding companies) and Lookout Windpower (and several holding

companies).  The agreement between GRHC and Edison became memorialized in three agreements.

---

[4]Plaintiff's Second Amended Complaint contained over 400 allegations and was 100 pages in length, and the facts are highly summarized in this Order.

[5]For purposes of this Order, the Court will adopt Plaintiff's use of the term "Insiders" which includes the Garners and their investment company, the Ansels and their investment company, and the Stevens' and their investment company.

[6]Edison Capital is not a named defendant in this case, but Edison Mission Energy is a named Defendant and allegedly owns three entities (Defendants Mission Wind, Mission Wind Two, and Mission Wind Three.)

GRHC was only named as the developer in one of the agreements, and the other agreements provided, respectively, that Forward Windpower (or its holding company) and Lookout Windpower (or its holding company) was the developer. In March of 2007, Forward Windpower and Lookout Windpower entered into redemption agreements with Mission Wind wherein Mission Wind allegedly agreed to pay approximately $13 million for these projects.

In 2008, GRHC was sued for $2.625 million because it had defaulted on several loans. Judgment was entered and execution commenced on March 24, 2008. On April 28, 2008, GRHC declared bankruptcy. On September 11, 2009, Plaintiff, as trustee in bankruptcy, filed this lawsuit. Plaintiff has since amended the complaint twice and asserts eighteen claims against twenty defendants.

The individual Defendants seek dismissal of the following counts: Count 1 (breach of fiduciary duty); Count 2 (negligent misrepresentation); Count 3 (fraud); Count 4 (fraudulent concealment); and Count 5 (civil conspiracy) on the basis that Plaintiff fails to state a claim because they are barred by the statute of limitations. They seek dismissal of Count 13 (civil RICO) on the basis that Plaintiff fails to state a claim. Finally, they seek dismissal of all counts against them on the basis that the Court lacks subject matter jurisdiction, or in the alternative, the Court should abstain from exercising jurisdiction.

Defendants Lookout Windpower Holding Company, LLC (Pennsylvania); Lookout Windpower Holding Company, LLC (Missouri); Forward Windpower Holding Company, LLC (Pennsylvania); Forward Windpower Holding Company, LLC (Missouri) (collectively referred to as the "Holding Companies"); Gardner Family Investment Company, LLC; Stevens Family Investment Company, LLC; and Windforce Holdings, Inc. (collectively referred to as the "Family

Companies") seek dismissal of the following counts: Counts 5 through 10 (fraudulent transfers) and Count 11 (equitable reformation/rescission) on the basis that they are state law claims and the Court lacks subject matter jurisdiction, or in the alternative, the Court should abstain from exercising jurisdiction.

Defendant Freestream Capital, LLC seeks dismissal of the following counts: Count 11 (equitable reformation/rescission) and Count 18 (breach of duty) on the basis that the Court lacks subject matter jurisdiction, or in the alternative, the Court should abstain from exercising jurisdiction.[7]

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[8] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[9] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10]

In determining whether a claim is facially plausible, the court must draw on its judicial

---

[7]Six Defendants (Lookout Windpower, LLC, Forward Windpower, LLC, Edison Mission Energy, Mission Wind Pennsylvania, Inc., Mission Wind Pennsylvania Two, Inc., and Mission Wind Pennsylvania Three, Inc.) did not file a motion to dismiss.

[8]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).

[9]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[10]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

experience and common sense.[11] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[12] Allegations that merely state legal conclusions, however, need not be accepted as true.[13]

### III. Analysis

Defendants ask the Court to dismiss the claims in the Complaint on three different bases: (1) the RICO claim for failure to state a claim; (2) the tort claims because they are barred by the statute of limitations; and (3) all claims because the Court lacks subject matter jurisdiction. The Court will address each issue.

### 1. RICO Claim

Plaintiff alleges that Defendants conspired to devise and carry out a plan designed to culminate in paying themselves the proceeds of the sale of the LW and FW projects and leave the GRHC creditors unpaid. Plaintiff incorporates by reference all of the Complaint and contends that the Insiders utilized the U.S. Postal service and interstate telephone, facsimile and computer communications, including email and online services, to transmit and transfer the various documents referenced to perpetuate their plan in violation of 18 U.S.C. § 1341 and § 1343.

"To state a RICO claim, a plaintiff must set forth four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[14] Because the issue of whether Plaintiff

---

[11]*Iqbal*, 129 S.Ct. at 1950.

[12]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[13]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14]*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005) (internal citation and quotations omitted).

has adequately alleged a pattern is dispositive, the Court will address this issue first.[15]

Defendants argue that Plaintiff does not sufficiently plead a pattern of racketeering activity because Plaintiff has only alleged a single scheme to accomplish a discrete goal directed at a finite group with no allegations of the threat of continuing racketeering activity. Plaintiff contends that "continuity" is a matter of timing and there is no requirement that there be more than one scheme. Plaintiff asserts that the Complaint shows that the predicate acts began in 2004 and continued over six years.

"A pattern of racketeering activity must include the commission of at least two predicate acts."[16] "In addition, to satisfy RICO's pattern requirement, [plaintiff needs to] allege not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity."[17] "A viable RICO claim requires a showing of '*continuity plus relationship*.'"[18] Although demonstrating a "relationship" is not difficult, it is more difficult to meet the showing required for "continuity."[19]

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of

---

[15]Defendants also argue that Plaintiff fails to adequately plead racketeering activity, in that he failed to plead the predicate acts of fraud with particularity, and that Plaintiff fails to adequately allege an enterprise under RICO. With respect to the alleged predicate acts of mail fraud and wire fraud, the Court notes that the alleged facts do appear to lack in particularity and specificity. For purposes of this Order, however, the Court will assume the predicate acts were adequately alleged.

[16]*Id.* (citation omitted); *see also* 18 U.S.C. § 1961(5) (a "'pattern of racketeering activity' requires at least two acts of racketeering, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity).

[17]*Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (internal quotations and citations omitted) (emphasis in original).

[18]*Id.* (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14 (1985) (emphasis in original)).

[19]*Id.* (citing *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir. 1992)).

repetition."[20]  Plaintiff is correct that there is no requirement that there be more than one scheme. If, however, the alleged facts do not demonstrate any threat of "future criminal conduct," the claim will fail.[21]  The Tenth Circuit has determined that "a closed-ended series of predicate acts constituting a singe scheme ... to accomplish a discrete goal ... directed at a finite group of individuals ... with no potential to extend to other persons or entities" is insufficient to satisfy RICO's continuos pattern requirement.[22]

Here, Plaintiff alleges that the Defendants engaged in a series of acts to accomplish the discrete goal of depriving GRHC's creditors of Defendants' assets.  This appears to be a closed-ended scheme to accomplish a specific goal in that the Complaint alleges the Insiders planned to keep the profits for themselves while leaving GRHC bankrupt.  In addition, there does not appear to be any threat of future criminal conduct or potential to extend to other entities.  As such, Plaintiff has not "alleged the type of activity that RICO was enacted to address."[23]  Accordingly, Plaintiff fails to state a RICO claim, and the Court grants Defendants' motion on this issue.[24]

### 2. Subject Matter Jurisdiction[25]

Plaintiff alleges subject matter jurisdiction under 28 U.S.C. §1331 on the basis that the

---

[20]*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).

[21]*See Boone*, 972 F.2d at 1556.

[22]*Id.* (citing *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)); *see also Bixler*, 596 F.3d at 761; *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009).

[23]*Boone*, 972 F.2d at 1556.

[24]Plaintiff requested leave to amend the Complaint, although he did not specifically file a motion or attach a proposed pleading, if the Court determined that he did not plead the RICO claim with particularity. It does not appear that additional particular facts would cure the pleading deficiencies in Plaintiff's allegation of "racketeering activity." As such, Plaintiff's informal request is denied.

[25]Because the Court dismissed the federal question claim, the Court will address whether it has subject matter jurisdiction before deciding whether the tort claims are barred by the statute of limitations.

Complaint presents a federal question. Plaintiff also alleges subject matter jurisdiction under 28

U.S.C. § 1334(b), on the basis that the Complaint arises out of, arises under, and relates to the

Chapter 7 bankruptcy proceedings of GRHC pending in the United States Bankruptcy Court for the

District of Kansas.

Defendants contend that if the RICO claim is dismissed, the Court has no subject matter

jurisdiction under 28 U.S.C. § 1331 because the only claim involving a federal question is the RICO

claim. Defendants also contend that the Court does not have "related to" bankruptcy jurisdiction

under 28 U.S.C. § 1334, and even if the Court believes that it does have jurisdiction under this

section, it should abstain from exercising such jurisdiction. Because the Court has dismissed the

federal RICO claim, the Court will address whether it has bankruptcy related jurisdiction under §

1334.

28 U.S.C. § 1334(b) provides:

Except as provided in subsection (e)(2), and notwithstanding any Act of Congress
that confers exclusive jurisdiction on a court or courts other than the district courts,
the district courts shall have original jurisdiction but not exclusive jurisdiction of all
civil proceedings arising under title 11, or arising in or related to cases under title 11.

"[D]istrict courts potentially have jurisdiction over three types of title 11 matters: (1)

proceedings arising under title 11, (2) proceedings arising in a case under title 11, and (3)

proceedings related to a case under title 11."[26] Because a district court may have jurisdiction if a

case falls in any of these categories, this Court will address whether it has "related to" jurisdiction.

"Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could

---

[26]*Benedictine Coll., Inc. v. Century Office Products, Inc.*, 866 F. Supp. 1323, 1326 (D. Kan. 1994) (citations
omitted).

have been brought in a district court or state court."[27]  "In assessing whether a claim arises in a case 'related to' title 11, the Supreme Court has embraced a broad test that effectuates Congress' intent 'to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'"[28]  The test in determining whether a civil proceeding is related to a bankruptcy proceeding is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[29] "Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate."[30]

Applying this "conceivable effect" test, the Court finds that this civil case is "related to" the bankruptcy proceeding.  Defendants explicitly acknowledge that a result in favor of Plaintiff on any of the claims in the Complaint theoretically might affect the administration of GRHC's estate because "there could conceivably be funds to distribute to unsecured creditors."  Plaintiff's numerous claims in this case assert that the $10.5 million payment due from Edison to the FW and LW companies is the only source for GRHC to pay its creditor claims.  Plaintiff is seeking to obtain these funds in an effort to pay GRHC's creditors.  As such, the outcome of this civil case has a "conceivable effect" on the bankruptcy proceeding, and the Court has subject matter jurisdiction.

Defendants contend that if the Court finds it has subject matter jurisdiction, it should abstain

---

[27]*Gardner v. United States* (*In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990).

[28]*Franklin Sav. Corp. v. Office of Thrift Supervision, Dept. of Treasury*, 213 B.R. 596, 599 (D. Kan. 1997) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984))).

[29]*Gardner*, 913 F.2d at 1518 (citing *Pacor,* 743 F.2d at 994).

[30]*Id.* (citations omitted).

from exercising it.  28 U.S.C. § 1334(c)(1) provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[31]

Arguing that Plaintiff's claims are state law claims with a limited connection to the bankruptcy proceeding, Defendants argue that abstention is appropriate.  Defendants rely on several cases that consider a variety of factors as to whether abstention is appropriate.  However, in both of the cases that Defendants rely upon, there were pendent state actions, and the courts remanded the matters to state court.  Indeed, one of the factors in considering whether abstention or remand was appropriate was the expertise of the court in which the action *originated*.[32]  In this case, there is no pendent state action.[33]  Several courts have determined that permissive abstention is inappropriate when there is no pending state action.[34]  Furthermore, it does not appear that Plaintiff's claims have a limited connection to the bankruptcy proceedings because if Plaintiff prevails on his claims, the bankruptcy estate would have considerably more assets for distribution.  As such, the Court declines to abstain from exercising its jurisdiction, and Defendants' motion to dismiss on that ground is denied.

---

[31]Defendant does not argue for mandatory abstention under 28 U.S.C. § 1334(c)(2) because no state court suit has been commenced.

[32]*See AUSA Life Ins. Co., Inc. v. Citigroup, Inc.*, 293 B.R. 471, 478 (N.D. Iowa 2003).

[33]Defendants note that this is the reason "mandatory abstention" is inappropriate under 28 U.S.C. § 1334(c)(2).

[34]*See In re Finova Capital Corp.*, 358 B.R. 113, 118 (Bankr. D. Del. 2006) ("[C]ourts generally do not permissively abstain from hearing a case unless there is a pending state action in favor of which the federal court should abstain."); *see also In re Commercial Fin. Servs., Inc.*, 251 B.R. 397, 413 (Bankr. N.D. Okla. 2000) (finding that "because there is no parallel state proceeding in which this matter might be litigated, abstention would effectively amount to a dismissal, which would unnecessarily require [plaintiff] to begin proceedings anew."); *Lambert v. Rodgers*, 1990 WL 198396, at *1 (D. Kan. Nov. 27, 1990) (finding that there was no pending state action and none of the main rationales for usage of the permissive abstention doctrine were present).

### 3. Statute of Limitations

11 U.S.C. § 108(a) provides:

If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of - -

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) two years after the order for relief.

The parties agree that § 108 extends the limitations period for those causes of action that had accrued and were within the limitations period of K.S.A. § 60-513(a) at the time of the bankruptcy filing. GRHC filed for bankruptcy on April 28, 2008. As such, if the tort causes of action had not expired as of the date bankruptcy was filed, April 28, 2008, they are timely because they were brought on September 11, 2009, within the time allowed by 11 U.S.C. § 108(a).[35]

The parties disagree as to when the tort claims accrued. Plaintiff contends that the doctrine of adverse domination or corporate domination applies, and the tort claims did not accrue until GRHC filed for bankruptcy and a trustee was appointed to the estate. Therefore, Plaintiff argues that the claims are not barred by the statute of limitations, and the claims are timely. Defendants assert that the doctrine of adverse domination is inapplicable and argue that Plaintiff's tort claims (counts 1 through 4) are barred by Kansas' two year statute of limitations because they expired prior to

---

[35]The civil complaint, which contains all of the causes of action at issue, was filed on September 11, 2009. As noted above, the parties agree that the filing of the bankruptcy petition on April 28, 2008 is the relevant date in determining the statute of limitations issue.

GRHC's filing of bankruptcy.[36]

Tort claims are governed by K.S.A. § 60-513(a) which establishes a two-year statute of limitations. The accrual of claims is generally governed by K.S.A. § 60-513(b) but also by K.S.A. § 60-513(d).

Both parties argue at length about the applicability, or inapplicability, of K.S.A. § 60-513(d) to this case. K.S.A. § 60-513(d) provides

> A negligence cause of action by a corporation or association against an officer or director of the corporation or association shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than five years beyond the time of the act giving rise to the cause of action. All other causes of action by a corporation or association against an officer or director of the corporation or association shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury and there exists a disinterested majority of nonculpable directors of the corporation or association, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable and there exists a disinterested majority of nonculpable directors of the corporation or association, but in no event shall such an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action. For purposes of this subsection, the term "negligence cause of action" shall not include a cause of action seeking monetary damages for any breach of the officer's or director's duty of loyalty to the corporation or association, for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, for liability under K.S.A. 17-5812, 17-6410, 17-6423, 17-6424 or 17-6603 and amendments thereto, or for any transaction from which the officer or director derived an improper personal benefit.

Plaintiff asserts that § 60-513(d) is applicable and should be liberally construed to include

GRHC within the definition of "association" or "corporation." Defendants argue that GRHC, as a

---

[36]The parties also disagree as to when the "substantial injury" occurred. Plaintiff asserts that the "substantial injury" occurred on March 28, 2007 (the date the first installment pursuant to the Redemption Agreement was misdirected) while Defendants contend that the "substantial injury" occurred on November 28, 2005 (the date that Defendants created FWHC-PA and LWHC-PA).

limited liability company, does not fit either definition and that § 60-513(d) on its face does not

apply to limited liability companies. Although the Court believes that Kansas courts may deem this

statute applicable to limited liability companies, it need not reach this issue because Kansas courts

still give life to the adverse domination theory in conjunction with K.S.A. § 60-513(b).

K.S.A. § 60-513(b) provides:

> Except as provided in subsections (c) and (d), the causes of action listed in subsection
> (a) shall not be deemed to have accrued until the act giving rise to the cause of action
> first causes substantial injury, or, if the fact of injury is not reasonably ascertainable
> until some time after the initial act, then the period of limitation shall not commence
> until the fact of injury becomes reasonably ascertainable to the injured party, but in
> no event shall an action be commenced more than 10 years beyond the time of the act
> giving rise to the cause of action.

In *Resolution Trust Corporation v. Scaletty*,[37] the Kansas Supreme Court addressed the

adverse domination doctrine in conjunction as to when an injury becomes "reasonably ascertainable"

under K.S.A. § 60-513(b).

> The adverse domination doctrine operates to toll the running of the statute of
> limitations when the directors or officers charged with wrongful conduct dominate
> the board of the corporation to the extent that there are no directors who have
> knowledge of the facts giving rise to possible liability who could have or would have
> induced the corporation to sue. The doctrine arises due to the control of the
> institution by culpable officers and directors, which precludes the possibility of filing
> suit because these individuals cannot be expected to sue themselves or initiate any
> action contrary to their own interests.[38]

The Kansas Supreme Court concluded "that the doctrine of adverse domination is applicable

in Kansas for determining when, under K.S.A. 60-513(b), this fact of injury to the corporation by

---

[37]257 Kan. 348, 891 P.2d 1110 (1995).

[38]*Id.* at 350-51, 891 P.2d at 1112 (citation omitted).

its directors was readily ascertainable by the corporation."[39]  The court adopted the "disinterested majority version" which provides that "claims by a corporation do not accrue and/or limitations do not run . . . until there exists a disinterested majority of nonculpable directors."[40]

Defendants appear to argue that the holding of *Resolution Trust*, and § 60-513(b), cannot apply because the legislature passed § 60-513(d) after the *Resolution Trust* decision, and the legislature therefore codified the "adverse domination" doctrine.   Kansas courts, however, have continued to apply the adverse domination doctrine in conjunction with K.S.A. § 60-513(b).  In *Prairie West Condominium Association, Inc. v. Wiseman*,[41] the Kansas Court of Appeals addressed whether a condominium association fell within the doctrine of adverse domination.[42]  Although the Court of Appeals determined that the adverse domination doctrine did not apply to the facts of that case, the case nevertheless demonstrates the continued viability of the doctrine under § 60-513(b).

Defendants rely upon *Prairie West* for the proposition that Kansas cases have not interpreted § 60-513(d) broadly in defining an "association."  However, the Kansas Court of Appeals did not discuss § 60-513(d) nor the definition of "association" under § 60-513(d).  As noted, the court instead addressed the adverse domination doctrine in conjunction with § 60-513(b).[43]  The other case Defendants relied upon for the proposition that Kansas law does not interpret § 60-513(d) broadly

---

[39]*Id.* at 356, 891 P.2d at 1116.

[40]*Id.* at 351, 891 P.2d at 1113 (citing *Hecht v. Resolution Trust*, 333 Md. 324, 339, 635 A.2d 394 (1994)).

[41]203 P.3d 88, 2009 WL 743322 (Kan. App. Mar. 13, 2009).

[42]*Id.* at *3-4.

[43]*Id.* at *4 ("In Kansas, adverse domination under K.S.A. 60-513(b) occurs when injury to a corporation by its corporate directors was reasonably ascertainable by the corporation.  When a corporation is prevented from discovering injuries to the corporation because directors or officers are acting adversely to the corporation, this doctrine operates to toll the statute of limitations rather than imputed the directors' or officer's knowledge onto the entire corporation.") (citing *Resolution Trust*, 257 Kan. at 356, 891 P.2d 1110).

also did not address the breadth or applicability of this statute.[44]  As such, the Court cannot conclude

that § 60-513(d) is the only option available to Plaintiff, and Plaintiff may proceed under § 60-

513(b).

Under § 60-513(b), and the adverse domination doctrine, an injury to a corporation is not

"reasonably ascertainable" until there exists a "disinterested majority of non-culpable directors."  In

this case, Plaintiff contends that the injury to GRHC was not "reasonably ascertainable" until the

Trustee was appointed.   Plaintiff alleges in the complaint that GRHC was owned by the Gardners,

Ansels, and Stevens.  Defendants Robert Gardner, James Ansell, and William Stevens were officers

in GRHC.   These are the same individuals whom Plaintiff alleges manipulated other companies in

an effort to leave GRHC with over $6 million in debt resulting in claims of breach of fiduciary duty,

negligent misrepresentation, fraud, and fraudulent concealment.  It was not until GRHC filed for

bankruptcy and a trustee appointed that the alleged injuries to GRHC were "reasonably

ascertainable" because until then, it does not appear from the complaint that a "disinterested majority

of non-culpable directors" existed.[45]  As such, Plaintiff's claims are timely, and Defendants' motion

to dismiss these tort claims as barred by the statute of limitations is denied.

Defendants' final argument that Plaintiff's conspiracy claim should be dismissed because the

underlying torts are time barred fails because the Court determined that the tort claims have not

expired.  As such, the Court denies Defendants' motion to dismiss this claim.

---

[44]*See, e.g.*, *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 27 P.3d 1 (2002) (discussing K.S.A. § 58-3101 *et seq.*).

[45]Defendants do not address the makeup of the board of directors or when a disinterested majority existed.   In addition, Defendants, in arguing that the cause of action accrued on November 28, 2005 (when GRHC's asset base was diluted and reduced), contend that a person in control of GRHC would have been able to pursue a cause of action at that time.  At that time, however, GRHC was controlled by the individuals who allegedly diluted the asset base and they would not be expected to sue themselves or initiate any action contrary to their own interests.

**IT IS ACCORDINGLY ORDERED** that Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 101) is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** only with respect to Plaintiff's RICO claim, and this claim is dismissed.  All other claims remain in the action.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint (Docs. 55, 57, and 58) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated this 4th day of February, 2011.

 s/ Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE
